# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 97

APRIL TERM, A.D. 2015

July 31, 2015

KYLE JORDAN LAWRENCE,

Appellant
(Defendant),

v.

S-14-0133

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Sweetwater County*
*The Honorable Richard L. Lavery, Judge*

*Representing Appellant:*
    W. Keith Goody, Attorney at Law, Cougar,Washington.

*Representing Appellee:*
    Peter K. Michael, Attorney General; David L. Delicath, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General; Darrell D. Jackson, Director, A. Walker Steinhage, Student Director, and Laureen S. Rogers, Student Intern, Prosecution Assistance Program, University of Wyoming, College of Law. Argument by Ms. Rogers.

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BURKE, Chief Justice.**

[¶1]   Appellant, Kyle Jordan Lawrence, challenges his conviction for voluntary manslaughter.  He contends the district court erred in excluding evidence indicating the victim was under the influence of methamphetamine at the time of the events leading to his death.  We affirm.

### ISSUE

[¶2]   Appellant presents the following issue:

>   Did the district court abuse its discretion when it granted the State's motion in limine and excluded any reference to methamphetamine use by Klakken, the shooting victim?

The State phrases the issue in a similar manner.

### FACTS

[¶3]   On the night of July 6, 2012, Appellant, Kyle Lawrence, and his fiancée were drinking and socializing with a neighbor, Ta'Maira Michalides, in their apartment complex in Rock Springs, Wyoming.  At approximately 9:30 p.m., the victim, Andrew Klakken, began shooting off fireworks in front of the apartment complex.  Ms. Michalides asked the victim to stop shooting fireworks because her son was sleeping.  The victim became belligerent and began shouting profanities and insults at Ms. Michalides and Appellant's fiancée.  Appellant came out of his apartment on the third story of the apartment building and began exchanging profanities with the victim.  After the verbal altercation escalated, Appellant retrieved a handgun from his apartment and told the victim "Come on up here, I['ve] got something for you."  At that point, Appellant's neighbor and friend, Michael Keeley, came to Appellant's apartment and urged him to put the gun away.  Appellant removed the magazine from the gun and set the magazine and the gun on a table in his apartment.

[¶4]   Appellant then returned to the balcony in front of his apartment and shot a firework in the direction of the victim.  The firework struck the victim or landed near him.  The victim began running up the stairs of the apartment complex toward Appellant, and Appellant told the victim not to continue because he had a loaded weapon.  Appellant retrieved the gun from his apartment, returned to the doorstep, and shot at the victim three times, striking him once.  The victim later died from the gunshot wound.  A toxicology report conducted in conjunction with the victim's autopsy indicated that the victim was under the influence of methamphetamine at the time of his death.

[¶5]   The State charged Appellant with first-degree murder, aggravated assault and

1

battery, and possession of a deadly weapon with unlawful intent. The district court subsequently dismissed the charges of aggravated assault and battery and possession of a deadly weapon at the request of the State. Prior to trial, the State filed a motion in limine to exclude any evidence of the victim's methamphetamine intoxication at the time of his death, including the post-mortem toxicology report and photos of a pipe found next to the victim's body. After a hearing at the final pretrial conference, the district court granted the motion, finding that evidence of the victim's intoxication was not relevant under W.R.E. 401 because there was no evidence to indicate Appellant knew the victim was under the influence of methamphetamine.[1] The court also found the evidence was inadmissible under W.R.E. 403 because "being accused of having the characteristics of a methamphetamine user is extremely prejudicial, particularly in a county like Sweetwater, with a severe problem with methamphetamine trafficking and use."[2]

[¶6] At trial, Appellant claimed he was acting in self-defense when he shot the victim. The jury rejected Appellant's claim, finding him guilty of voluntary manslaughter, a lesser included offense of first-degree murder. The district court sentenced Appellant to 14 to 20 years in prison.

[¶7] Following trial, Appellant submitted a "Motion for Judgment of Acquittal and a New Trial." He argued that he was entitled to a new trial, in part, because he had not been permitted "to mention the fact that [m]ethamphetamine was found in the victim's system at autopsy or to discuss the significant amount of [m]ethamphetamine in his system at the time he was shot by the Defendant." The district court denied the motion, stating that "The evidence presented at trial has not changed the Court's evaluation of the probative value [of the evidence] and the risk of unfair prejudice and confusion of the issues." Appellant subsequently initiated this appeal.

---

[1] W.R.E. 401 provides as follows:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

[2] W.R.E. 403 provides that:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

[¶8] While his appeal was pending, Appellant filed a motion with this Court seeking a limited remand to develop his claim that his counsel was ineffective for failing to hire an expert witness to interpret the post-mortem toxicology report of the victim, provide a report to the district court, and produce the expert to testify at the hearing on the State's motion in limine. We granted the motion, and the district court held an evidentiary hearing. At the hearing, Dr. David Benjamin offered expert testimony relating to the effects of methamphetamine. Dr. Benjamin testified that the victim had an "extremely high" level of methamphetamine in his blood at the time of his death, and he opined that "the methamphetamine significantly contributed to [the victim's] agitation and violent behavior and aggressive nature." However, on cross-examination, when Dr. Benjamin was asked whether the victim would have acted differently if he had not been under the influence of methamphetamine, Dr. Benjamin stated that he "would not be able to respond to that without speculating."

[¶9] Following the hearing, the district court concluded that counsel's failure to call an expert witness did not constitute deficient performance. The district court found as follows:

> Dr. Benjamin acknowledged that he was not able, without speculating, to testify whether Mr. Klakken had developed a tolerance to methamphetamine or how that level of methamphetamine affected his behavior, if it affected his behavior at all. More importantly, [Appellant] has still not made any connection between Dr. Benjamin's testimony about how dangerous a person who is using methamphetamine has the potential to be and the nature of the threat **that was perceived by [Appellant]** at the time he decided to use deadly force against Mr. Klakken.

(Emphasis in original.) The district court also noted that "Dr. Benjamin did not have any evidence that the Defendant had direct knowledge on July 6, 2012 that Mr. Klakken had been using methamphetamine." Appellant does not challenge the district court's ruling that his counsel was not ineffective.

## *STANDARD OF REVIEW*

[¶10] We review a trial court's evidentiary rulings for an abuse of discretion.

> Evidentiary rulings are within the sound discretion of the trial court and include determinations of the adequacy of foundation and relevancy, competency, materiality, and remoteness of the evidence. This Court will generally accede to the trial court's

determination of the admissibility of evidence unless that court clearly abused its discretion.

*Brock v. State*, 2012 WY 13, ¶ 23, 272 P.3d 933, 939-40 (Wyo. 2012) (quoting *Edwards v. State*, 2007 WY 146, ¶ 7, 167 P.3d 636, 637 (Wyo. 2007)). "The ultimate issue that we decide in determining whether there has been an abuse of discretion is whether or not the court could have reasonably concluded as it did." *Edwards v. State*, 973 P.2d 41, 45 (Wyo. 1999) (quoting *State v. McDermott*, 962 P.2d 136, 138 (Wyo. 1998)).

## *DISCUSSION*

[¶11]  As noted above, Appellant claimed that he was acting in self-defense when he shot and killed Mr. Klakken.  The basic rule relating to self-defense was set forth in Jury Instruction 23:

**Instruction No. 23**

It is lawful for a person who is being assaulted to defend himself from attack if he has reasonable grounds for believing and does believe that bodily injury is about to be inflicted upon him.  In doing so he may use all force which would appear to a reasonable person, in the same or similar circumstances, to be necessary to prevent the injury which appears to be imminent.

The jury was also instructed, consistent with Wyoming law, that a self-defense claim is not available to an aggressor who provokes the conflict:

**Instruction No. 28**

Generally, the right to use self-defense is not available to an aggressor who provokes the conflict.  However, if one provokes a conflict but thereafter withdraws in good faith and informs the adversary by words or actions of the desire to end the conflict and is thereafter pursued, that person then has the same right of self-defense as any other person.  The person is justified in using force to the same extent that any other person would be who was acting in self-defense.

[¶12] Appellant contends that evidence relating to the victim's methamphetamine intoxication at the time of his death was admissible under W.R.E. 401 because it was relevant to Appellant's claim of self-defense.  According to Appellant, the victim's methamphetamine intoxication was relevant because it "casts significant light on the

specific nature of the threat to [Appellant]." Appellant claims that the exclusion of evidence relating to the victim's methamphetamine intoxication deprived the jury of a critical fact necessary to place Appellant's behavior in proper context. Appellant further contends that the district court's ruling deprived him of his constitutional right to present a defense.

[¶13] The State claims that evidence relating to the victim's methamphetamine intoxication was not relevant because there is no evidence in the record indicating that Appellant knew the victim was under the influence of methamphetamine. The State also contends the district court correctly determined that the risks of unfair prejudice and confusion of the issues outweighed the probative value of the evidence under W.R.E. 403. The State notes that Dr. Benjamin could not give an opinion as to whether the victim would have acted differently if the victim had not been under the influence of methamphetamine. Finally, the State contends that, even if the district court erroneously excluded the evidence relating to the victim's methamphetamine intoxication, Appellant was not prejudiced by the error. According to the State, even if Appellant knew the victim was under the influence of methamphetamine, the evidence introduced at trial clearly showed that Appellant provoked the victim's conduct. The State asserts that Appellant invited the conflict by challenging the victim to come up to the third floor of the apartment complex and threatening him with "I've got something for you." The State also contends that Appellant provoked the conflict by shooting a firework in the direction of the victim. As a result of these actions, the State asserts that a self-defense claim was not available to Appellant.

[¶14] This Court has never addressed the issue of whether evidence of a homicide victim's intoxication at the time of his death is admissible when a defendant claims he acted in self-defense. We note, however, that other jurisdictions have found such evidence to be admissible when there is evidence indicating the defendant is aware of the victim's intoxication. For example, in *State v. Plew*, 745 P.2d 102, 105 (Ariz. 1987), the Arizona Supreme Court reversed a trial court's decision to exclude evidence of the victim's cocaine intoxication where the defendant believed the victim to be on a cocaine high at the time of the altercation. The victim was the defendant's cocaine supplier and the defendant was familiar with the impact of cocaine on the victim because he had been present on many occasions when the victim used cocaine. *Id.* Considering these facts, the court found that the evidence was admissible:

> It is our opinion as well that the effect of cocaine intoxication on mental and physical behavior is a proper subject for expert testimony in an appropriate case. We believe this is such a case. An addict is accused of attempting to murder his supplier, also an addict. The defendant claims self-defense -- alleging he was trying to protect himself from the attack of an angry, intoxicated "pusher" acting under a cocaine-induced

5

frenzy.

*Id.*, 745 P.2d at 106. In *Sipe v. State*, 404 S.W.3d 164 (Ark. App. 2012), the court applied the same principle in determining that evidence of the victim's intoxication was not admissible where the defendant was not aware of the victim's intoxication. The court explained as follows:

> In the context of self-defense, the victim's alleged propensity toward violence, his criminal background, and his intoxication at the time of death could only possibly be relevant if appellant both knew about those factors and knew who he was defending himself against when he fired his weapon. *Britt v. State,* 7 Ark. App. 156, 161, 645 S.W.2d 699, 702 (1983) (holding that testimony of specific acts unknown to a defendant are not directly probative of his belief that he is about to encounter unlawful deadly force). Here, appellant admitted that he fired his gun without knowing who was riding toward him. Therefore, because appellant did not know upon whom he was shooting, he could not have considered the victim's background and state of mind before firing his weapon. Accordingly, such evidence would only have served to prejudice the victim.

*Id.*, 404 S.W.3d at 172. *See also* 41 C.J.S. Homicide § 447, and cases cited therein.

[¶15] Appellant cites *Bromley v. State*, 2009 WY 133, 219 P.3d 110 (Wyo. 2009) as support for his claim that the evidence of the victim's intoxication was admissible. In *Bromley*, the defendant shot and killed a friend while target shooting. He was charged with the crime of second-degree murder and was ultimately convicted of the lesser included offense of manslaughter.

[¶16] In *Bromley*, the State's theory of the case was that the defendant was a heavy user of methamphetamine who became volatile and violent when under the influence of the drug. In accordance with this theory, the State sought to introduce evidence of the defendant's historic use of methamphetamine and his alleged use of the drug on the day of the killing. *Id.*, ¶ 6, 219 P.3d at 113. The district court initially ruled that the evidence was inadmissible under Rule 404(b). *Id.*, ¶ 8, 219 P.3d at 113. Prior to trial, however, the defendant's cellmate came forward to say that the defendant admitted that he used methamphetamine on the day of the killing and that he committed the crime because he was "coming down from drugs" and he was "all methed out" at the time of the shooting. *Id.*, ¶¶ 9-11, 36, 219 P.3d at 113, 120. That evidence was ruled admissible under Rule 801(d)(2), providing that admissions by a party-opponent are not hearsay. *Id.*, ¶ 35, 219 P.3d at 119. The court also admitted expert testimony relating to "the effect of

6

methamphetamine on the human body and mind, both during use and during withdrawal from use" and to "the detectability of methamphetamine in the human body through chemical analysis." *Id.*, ¶ 14, 219 P.3d at 114. The defendant appealed, and we found no abuse of discretion in the trial court's decision to admit evidence of the appellant's use of methamphetamine. With respect to the appellant's statements to the jailhouse informant, we concluded that "they were relevant to prove the appellant's state of mind at the time of the shooting, they were more probative of his state of mind than any other available evidence, and they were not unduly prejudicial." *Id.*, ¶ 41, 219 P.3d at 121. We further concluded that "Once [the jailhouse informant] testified about the appellant's admission that he was 'methed out' at the time of the shooting, the foundation was laid for [the expert witness's] testimony about the effects of methamphetamine use." *Id.*, ¶ 42, 219 P.3d at 121.

[¶17] Appellant claims that because testimony relating to methamphetamine use was introduced in *Bromley*, it should have been allowed here. We disagree. *Bromley* is distinguishable from the present case. In *Bromley*, the defendant's state of mind was at issue and evidence of that state of mind was relevant to the elements of the crimes charged. In *Bromley*, the shooting occurred without provocation and the defendant claimed it was accidental. We determined that the testimony indicating he was under the influence of methamphetamine was "more probative of his state of mind than any other available evidence." The defendant did not claim he was acting in self-defense and, in light of that fact, there was no issue as to whether the victim's state of mind influenced the reasonableness of the defendant's actions. *Bromley* provides no support for the proposition that a victim's methamphetamine intoxication is relevant to the reasonableness of the defendant's actions absent evidence indicating the defendant is aware of the intoxication.

[¶18] In the present case, the State's motion in limine to exclude evidence of the victim's methamphetamine intoxication asserted that "there is absolutely no evidence the State is aware of that the defendant in this case knew the [victim] was using methamphetamine beyond bald assertions the victim was a 'Crack head.'" Indeed, in taped interviews with law enforcement, Appellant repeatedly referred to the victim as a "crack head," but indicated that he did not know whether the victim was intoxicated at the time of his death. Appellant stated "I mean, I could fight [the victim] and beat the shit out of him and his friend, but I don't know what he was going to do, man. You don't – I don't know what drug he was on. Even if he wasn't on a drug, I don't care." At the hearing on the State's motion in limine, defense counsel stated that "The Defendant did not know that this [victim] was on meth, but his statements to law enforcement have been consistent . . . that he believed that he was on something." Defense counsel, however, did not identify any specific statements made by Appellant. Following the hearing, the district court determined that "There's no evidence, or suggestion that there's evidence, that the Defendant knew that the victim was under the influence of methamphetamine."

[¶19] The issue was revisited at trial before Appellant took the stand to testify in his defense. Defense counsel indicated that Appellant would testify that the victim appeared to be under the influence of alcohol and drugs but acknowledged that "[Appellant] has no way to say that it was methamphetamine." At no point during trial did Appellant's counsel offer any evidence, in an offer of proof or otherwise, suggesting that Appellant knew the victim was under the influence of methamphetamine at the time of his death. Appellant also presented no offer of proof indicating that the victim was a regular user of methamphetamine or that he had a reputation for violence or aggression when under the influence of methamphetamine. Finally, we note that during Appellant's testimony, he stated that he had never met the victim, indicating that he did not know whether the victim was a regular user of methamphetamine. Under these facts, where there is no evidence to indicate Appellant was aware of the victim's intoxication, we cannot conclude that evidence of the victim's methamphetamine intoxication had "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Because Appellant presented no evidence to indicate that he was aware of the victim's methamphetamine intoxication, the evidence demonstrating that the victim was under the influence of methamphetamine was not relevant to Appellant's self-defense claim. Accordingly, we find no basis to conclude that the district court abused its discretion in refusing to admit the evidence.

[¶20] Affirmed.